**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2016 MSPB 43**

Docket No. SF-0752-16-0219-I-1

**Michael R. Palafox,**

**Appellant,**

**v.**

**Department of the Navy,**

**Agency.**

December 20, 2016

Elbridge W. Smith, Esquire, Honolulu, Hawaii, for the appellant.

Jason Zhao, Esquire, Pearl Harbor, Hawaii, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1      The appellant has filed a petition for review of the initial decision that sustained his indefinite suspension. For the reasons set forth below, we DENY the petition and AFFIRM the initial decision.

## BACKGROUND

¶2      At all times relevant to this appeal, the appellant was employed as a Shipfitter Supervisor I, WS-3820-10, at the agency's Pearl Harbor Naval Shipyard & Intermediate Maintenance Facility (PHNSY & IMF, or Shipyard) in Pearl Harbor, Hawaii. Initial Appeal File (IAF), Tab 4 at 13. The parties have

stipulated that the appellant's position required access to classified information. IAF, Tab 22.

¶3        On September 15, 2015, the Shipyard Commander issued a notice of intent to suspend the appellant's access to classified information and the controlled industrial area (CIA) because of security concerns involving his "Personal Conduct and Drug Involvement."  IAF, Tab 4 at 134-45.  The notice stated that the appellant had been interviewed by PHNSY & IMF investigators in connection with an investigation into illegal drug use by certain PHNSY & IMF employees, and that the investigation found that the appellant had falsely denied having used marijuana during his Shipyard employment.  *Id*. at 134.  According to the notice, the appellant's illegal drug activity was corroborated by other Shipyard employees, as follows:

a.  a Shipyard employee stated that during the time period beginning around 2005 until around 2010 or 2011, he smoked marijuana with [the appellant] two times.  He stated that the two occasions on which he smoked marijuana with [the appellant] took place at [the appellant's] home.  He observed [the appellant] smoke marijuana in a joint and a pipe.  He also stated that [the appellant is] a "stoner."

b.  the employee also stated that he has purchased marijuana from [the appellant] between six to eight times and that he paid $60.00 for the marijuana.  He also stated that other Shipyard employees have purchased marijuana from [the appellant] and that [the appellant is] a "dealer" and does not give away free marijuana. He stated that [the appellant has] transacted marijuana at the Shipyard.  The employee stated that, when marijuana was purchased from [the appellant], [the appellant] brought the marijuana to the Shipyard and the transactions occurred in the shop at Intermediate Maintenance Facility.

c.  a different Shipyard employee stated that he purchased marijuana from [the appellant] around three or four months ago.  He stated he went to [the appellant's] home and that he waited outside on the road, [the appellant] then came outside and sold him marijuana.

*Id*. The appellant was provided an opportunity to respond in writing, and he availed himself of that opportunity. *Id*. at 133-34. On September 30, 2015, the Shipyard Commander notified the appellant of his decision to suspend the appellant's access to classified information and the CIA effective that day pending a final determination by the Department of Defense Consolidated Adjudication Facility (DOD CAF) on his continued eligibility for a security clearance and assignment to sensitive duties. *Id*. at 133.

¶4    By notice dated October 5, 2015, the agency proposed to indefinitely suspend the appellant for failure to meet a condition of employment based on the suspension of his access to classified information. *Id*. at 127-30. The proposal reiterated the reasons the appellant's access to classified information had been suspended, as set out in the September 15, 2015 notice of intent. *Id*. at 127-28. The proposing official explained that he also had considered the possibility of carrying the appellant on administrative leave or reassigning him to another position not requiring access to classified information, but had concluded that neither alternative was "viable." *Id*. at 128. The appellant responded orally and in writing. *Id*. at 29-117.

¶5    On December 10, 2015, the agency issued a decision indefinitely suspending the appellant effective December 12, 2015, pending a final decision by DOD CAF on the appellant's security clearance and access to classified information, and any subsequent appeal of DOD CAF's decision. *Id*. at 14-18. The deciding official stated that he concurred with the proposing official in his finding that administrative leave and reassignment were not "viable" alternatives. *Id*. at 15.

¶6    The appellant filed a timely Board appeal. IAF, Tab 1. Following oral argument, the administrative judge issued an initial decision sustaining the indefinite suspension. IAF, Tab 24, Initial Decision (ID). Regarding the charge, the administrative judge found that the parties had stipulated that the appellant's position required access to classified information, and that his access to classified

information had been suspended pending a final determination by DOD CAF regarding his security clearance. ID at 4; IAF, Tab 22. The administrative judge also found that the appellant failed to establish his affirmative defenses that the agency violated his due process rights and committed harmful procedural error. ID at 4-9. Finally, the administrative judge determined that the indefinite suspension had a condition subsequent that would bring it to an end. ID at 9-10.

¶7    On review, the appellant again argues that the agency denied him due process. Petition for Review (PFR) File, Tab 1. The agency has responded. PFR File, Tab 4.

## ANALYSIS

¶8    An indefinite suspension lasting more than 14 days is an adverse action appealable to the Board under 5 U.S.C. § 7513(d). 5 U.S.C. § 7512(2); *Rogers v. Department of Defense*, 122 M.S.P.R. 671, ¶ 5 (2015). It is well settled that an agency may indefinitely suspend an appellant when his access to classified information has been suspended and he needs such access to perform his job. *See Rogers*, 122 M.S.P.R. 671, ¶ 5. In such a case, the Board lacks the authority to review the merits of the decision to suspend access. *Id*. However, the Board retains the authority to review whether: (1) the appellant's position required access to classified information; (2) the appellant's access to classified information was suspended; and (3) the appellant was provided with the procedural protections specified in 5 U.S.C. § 7513. *See id*., ¶ 5. In addition, the Board has the authority under 5 U.S.C. § 7701(c)(2)(A) to review whether the agency provided the procedural protections required under its own regulations. *Id*., ¶ 7.[1] Finally, because a tenured Federal employee has a property interest in

---

[1] In this regard, the Board has found that DOD procedures governing "personnel security determinations" do not apply to the suspension of access to classified information by local commands, such as the Shipyard in this case. *Rogers*, 122 M.S.P.R. 671, ¶¶ 8-13. We discern no error in the administrative judge's finding

continued employment, the Board also may consider whether the agency provided minimum due process in taking the indefinite suspension action. *See Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶¶ 13-15 (2014) (holding that the Board has the authority to review whether the agency provided due process in taking an indefinite suspension action based on the suspension of a security clearance). Here, the only issue remaining in dispute is whether the agency provided the appellant due process.

¶9        Due process requires, at a minimum, that an employee being deprived of his property interest be given "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).[2] As the U.S. Supreme Court explained in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542-46 (1985), the opportunity to respond to a proposed adverse action is important for two reasons. First, an adverse action will often involve factual disputes and consideration of the employee's response may clarify such disputes. *Id.* at 543; *see Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376 (Fed. Cir. 1999). Second, "[e]ven where the facts are clear, the appropriateness or necessity of the [penalty] may not be," and in such cases the employee must receive a "meaningful opportunity to invoke the discretion of the decision maker." *Loudermill*, 470 U.S. at 543; *see Stone*, 179 F.3d at 1376. Thus, "the employee's response is essential not only to the issue of whether the allegations are true, but also with regard to whether the level of penalty to be

---

that the local command acted within its authority in suspending the appellant's access to classified information pending a final decision by DOD CAF on his security clearance. ID at 6-7 (citing Secretary of the Navy Manual 5510.30, ¶ 9-7); *see Rogers*, 121 M.S.P.R. 671, ¶ 12 (citing DOD 5200.2-R, § C8.1.3).

[2] Because the appellant was afforded an opportunity to respond to the proposed indefinite suspension prior to being suspended, it is clear that the hearing took place at a "meaningful time." *Buelna*, 121 M.S.P.R. 262, ¶ 21.

imposed is appropriate." *Stone*, 179 F.3d at 1376; *see Buelna*, 121 M.S.P.R. 262, ¶ 22 (finding that the considerations described in *Loudermill* were present in determining whether an agency provided due process to an employee who was indefinitely suspended based on the suspension of his security clearance).

¶10　　　As to the facts underlying the proposed action, the agency provided minimal due process by informing the appellant of the basis for the indefinite suspension, i.e., that his position required access to classified information and that his access had been suspended. *See Buelna*, 121 M.S.P.R. 262, ¶ 25. The agency further complied with the procedural requirements of 5 U.S.C. § 7513 by informing the appellant of the specific reasons for the suspension of his access to classified information. *See King v. Alston*, 75 F.3d 657, 662 (Fed. Cir. 1996) (finding that the agency provided the employee with sufficient information to make an informed reply when it notified him that his security clearance was being suspended because of a "potential medical condition" and then informed him that he was being indefinitely suspended from duty based on the suspension of his security clearance); *cf. Cheney v. Department of Justice*, 479 F.3d 1343, 1353 (Fed. Cir. 2007) (finding that the employee was not provided with the opportunity to make a meaningful response to the notice of proposed suspension when he had to guess at the reasons for his security clearance suspension).

¶11　　　Regarding the penalty, the appellant argues that he was denied a meaningful opportunity to persuade the deciding official to reassign him instead of imposing the proposed indefinite suspension. PFR File, Tab 1 at 8-11. He contends that the deciding official did not have the authority to choose that alternative because, according to the proposal notice, reassignment would have been "inconsistent" with official agency policy. IAF, Tab 4 at 15, 128. The agency asserts that, notwithstanding the proposing official's statement, there is in fact no agency policy prohibiting reassignment following a loss of access to classified information. PFR File, Tab 4 at 6. However, even if agency policy did prohibit reassigning the appellant, that restriction would not constitute a due

process violation, because due process does not require that a deciding official consider alternatives that are prohibited, impracticable, or outside management's purview. *Buelna*, [121 M.S.P.R. 262](#), ¶ 27.

¶12 Furthermore, to the extent administrative leave may have been a viable alternative to suspension without pay, the appellant was not denied his due process right to invoke the discretion of a deciding official with the authority to select that alternative. *See id*., ¶ 28. The appellant cites deposition testimony in which the deciding official indicated that he could not think of a scenario in which he would have considered keeping the appellant on administrative leave. PFR, Tab 1 at 17 (deposition transcript at 40-41). However, the deciding official went on to clarify that his statement did not mean that the appellant "couldn't come up with some evidence that [he] would consider." *Id*. (deposition transcript at 41). In particular, he explained that he might carry an employee in the appellant's position on administrative leave if he believed that the allegations underlying the suspension of the employee's access to classified information were not well founded. *Id*. at 16-17 (deposition transcript at 37-40). Thus, we find that the deciding official did have discretion to select administrative leave as an alternative to suspension without pay. While the appellant did not succeed in persuading the deciding official to carry him on administrative leave, the record reflects that he was notified of the allegations underlying the suspension of his access to classified information, and received an opportunity to present rebuttal evidence before the final penalty determination was made. IAF, Tab 4 at 29-130.

¶13 The appellant further contends that he was denied due process because his access to classified information "was suspended through a process by which he was not afforded the right to review information relied upon and provide a meaningful response to the officials proposing and deciding suspension of access to classified information." PFR File, Tab 1 at 12. However, it is well settled that employees "do not have a liberty or property interest in access to classified information, and the termination of that access therefore [does] not implicate any

due process concerns." *Gargiulo v. Department of Homeland Security*, 727 F.3d 1181, 1184-85 (Fed. Cir. 2013) (quoting *Jones v. Department of the Navy*, 978 F.2d 1223, 1225 (Fed. Cir. 1992)); *see Buelna*, 121 M.S.P.R. 262, ¶ 24.

¶14     In sum, we agree with the administrative judge's determination that the agency did not deprive the appellant of due process.  Accordingly, we deny the petition for review.  The initial decision is affirmed.

## ORDER

¶15     This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the

United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.